500 P.2d 1137

Frank A. TRONSEN, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Productions Painting, Inc., Respondent Employer,

Fireman's Fund Insurance Company, Respondent Carrier.

No. 1 CA–IC 678.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 19, 1972.

Langerman, Began & Lewis, P.A., by Stanley J. Marks and Jack Levine, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, The Industrial Commission of Arizona, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Donald L. Cross, Phoenix, for respondent carrier.

DONOFRIO, Judge.

This is a review by writ of certiorari of the findings and award of The Industrial Commission of Arizona. The sole issue is whether the finding that petitioner is not entitled to medical benefits beyond April 1, 1970 is reasonably supported by the evidence.

Petitioner Tronsen, age 54, injured his back while working on February 2, 1970 when he slipped as he was carrying two five-gallon buckets of paint. He reported the accident and injury to his supervisor and continued doing light work that day. On February 10 he went to and began treatments with Dr. Victor J. Haag, a chiropractor and naturopathic physician. On February 18, at the request of respondent carrier, petitioner was examined by Dr. Robert A. Johnson, a board-certified orthopedic surgeon. At that time Dr. Johnson made a report of his examination, diagnosis and treatment. A copy of this report was given to Dr. Haag.

Dr. Johnson's diagnosis was that petitioner had a degenerative disc disease of the mid-lumbar spine and a superimposed strain-sprain of the lumbar spine. In the area of treatment he instructed petitioner

as to the care of his back and recommended certain flexion exercises. In his report Dr. Johnson stated that he felt petitioner would not benefit from further chiropractic manipulation or treatment. He anticipated that within a period of two to four weeks petitioner's condition would be stationary and that he would have no impairment related to the injury.

On March 3, 1970 Dr. Haag wrote the carrier's representative that he had received Dr. Johnson's report and had instructed petitioner regarding the care of his back and the flexion exercises. He stated he would observe petitioner and that he anticipated petitioner's discharge without disability within the next thirty days. On March 13 Dr. Haag requested authority from respondent carrier for a second series of treatment. On March 17 the carrier responded, indicating that it would not authorize additional treatments in view of Dr. Johnson's report. On April 1 Dr. Haag wrote that he did not completely concur with Dr. Johnson's report and would continue to treat petitioner until he was asymptomatic. Dr. Haag continued the treatments until May 20 at which time he discharged petitioner. Dr. Haag administered approximately sixty treatments between February 10 and May 20, 1970.

On April 30, 1970 the finding and award granting medical benefits through April 1, 1970 was made by the hearing officer. This award was affirmed by the Commission. It is the series of treatments by Dr. Haag from April 1 through May 20, 1970 which is the subject of this appeal.

It is petitioner's contention that Dr. Johnson was not a treating physician and that his report of February 18, 1970 in which he prognosticated recovery within two to four weeks without further treatments by Dr. Haag was based on a future eventuality and therefore should not be given greater weight than Dr. Haag's opinion. Had the Industrial Commission issued its award at that time based only on the prognosis of Dr. Johnson, the petitioner's

argument may have had merit. The facts, however, are that Dr. Johnson did actually examine petitioner and after examination did prescribe the treatment that he should follow. Also pertinent is the testimony of Dr. Johnson before the hearing officer a year later to the effect that petitioner had a sprain of the lumbar spine and that the sprain should subside within the period of time he mentioned because the flexion exercises would afford the necessary manipulation. He also explained the statement in his report in which he said "I do not feel he will benefit from further chiropractic manipulation or treatment" by saying that with advanced degenerative joint and disc disease any type of manipulation by someone who is not competent to do it will aggravate the condition. He also explained that chiropractic manipulation is understood as being "forceful manipulation of the spine in extension". On cross-examination Dr. Johnson testified in effect that he did not know of any medical doctor who would employ such manipulation in this type of situation, although manipulation "might" give some short-term relief to petitioner.

Petitioner testified before the hearing officer on March 1, 1971 that he had not lost any time as the result of the accident, and that he was not at the time having any difficulty with his back, and that he felt perfect.

The two doctors were in sharp conflict as to the need of petitioner's further medical treatment. It was stipulated that Dr. Johnson was highly qualified in the field of orthopedic surgery. Where the answer, as in this case, is within the province of medical knowledge, the Commission must rely upon expert medical testimony. Paulley v. Industrial Commission, 91 Ariz. 266, 371 P.2d 888 (1962). When there is a conflict in the medical evidence the Commission has the duty of resolving the conflict, and in so doing may consider the experience and qualifications of the experts in order to determine which one

151

should be given the greater weight. Meeks v. Industrial Commission, 7 Ariz.App. 150, 436 P.2d 928 (1968).

We find the award is reasonably supported by the evidence.

Affirmed.

STEVENS, P. J., and CASE, J., concur.