NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————

PDS TECHNICAL SERVICES, INC., *Petitioner Employer,*

ZURICH AMERICAN, *Petitioner Carrier,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

RON SILBERSCHLAG, *Respondent Employee.*

No. 1 CA-IC 15-0055
FILED 5-31-2016

———————————

Special Action - Industrial Commission

ICA Claim No.  20132-260313
Carrier Claim No. 2010228241
Administrative Law Judge Aryka S. Radke

**AWARD AFFIRMED**

———————————

COUNSEL

Lester, Norton & Brozina, P.C., Phoenix
By Christopher S. Norton, Steven C. Lester, Rachel P. Brozina
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent Industrial Commission of Arizona*

Robert E. Wisniewski, P.C., Phoenix
By Robert E. Wisniewski
*Co-Counsel for Respondent Employee*

Toby Zimbalist, Phoenix
*Co-Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Peter B. Swann and Judge Jon W. Thompson joined.

---

**O R O Z C O**, Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review for continuing benefits. The petitioner employer, PDS Technical Services, Inc. (PDS), presents two issues on appeal:

> (1) whether the administrative law judge (ALJ) erred by finding that the industrial injury contributed to a compensable aggravation of the respondent employee's (claimant's) preexisting lung condition; and

> (2) whether the ALJ abused her discretion by adopting Phillip Harber, M.D.'s medical opinion.

Because we find that the ALJ did not abuse her discretion by adopting Dr. Harber's testimony and that his opinion supports the award, we affirm.

**JURISDICTION AND STANDARD OF REVIEW**

**¶2** This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21.A and 23-951.A (West 2016)[1] and Rule 10, Arizona Rules of Procedure for Special Actions. In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14

---

[1] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

(App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

## FACTS AND PROCEDURAL HISTORY

**¶3**      PDS recruited the claimant to work as a construction equipment test technician for Case-New Holland. This involved driving bulldozers, front loaders and bobcats on Case-New Holland's testing grounds near the White Tank Mountains. The claimant testified that he dug, piled and moved dirt with the various machines. Although some machines had climate-controlled cabs, it was very dusty work.

**¶4**      On July 26, 2013, the claimant was in the field operating a machine when he became sick, dizzy, and began cramping. It was believed he had heat exhaustion. When he continued to feel sick and fatigued the following week, PDS sent him to Concentra, where he filed a workers' compensation claim. His claim was accepted for benefits, and he received conservative medical treatment. Following an independent medical examination (IME) with Gerald Schwartzberg, M.D., the petitioner carrier, Zurich American Insurance Company (Zurich), closed the claimant's claim with no permanent impairment. The claimant timely requested an ICA hearing, and the ALJ held three hearings for testimony from the claimant and Drs. Harber and Schwartzberg.

**¶5**      Following the hearings, the ALJ entered an award for continuing medical benefits.

> 5. The undersigned finds [the claimant's] testimony credible, particularly with respect to his prior medical history, his job duties and working environment, and his current symptoms and functional limitations. . . .
>
> * * * *
>
> 12. Both Dr. Harber and Dr. Schwartzberg agree that [the claimant's] heat stroke/heat exhaustion has resolved. There is a clear conflict between the physicians with respect to whether there is a causal relationship between [the claimant's] underlying UIP [usual interstitial pneumonitis] and the instant industrial accident . . . . To the extent there is a conflict of medical opinion, Dr. Harber's opinion is adopted as more well-founded and more probably correct.

> Consequently, I conclude that the July 26, 2013 industrial accident was a contributing factor in aggravating [the claimant's] preexisting pulmonary condition and that said condition is not yet medically stationary. [The claimant] is entitled to continued active care.

PDS timely requested administrative review, and the ALJ supplemented and affirmed the award. PDS brought this special action.

## DISCUSSION

**¶6** PDS first argues that the ALJ erred by finding that the industrial injury contributed to a compensable aggravation of the claimant's preexisting lung condition. In order to be entitled to receive continuing medical benefits, the claimant had the burden of proving that his physical condition is causally related to his industrial injury and that he is not yet medically stationary. *See Lawler v. Indus. Comm'n*, 24 Ariz. App. 282, 284 (1975); *McNeely v. Indus. Comm'n*, 108 Ariz. 453, 455 (1972). If the causal connection is "peculiarly within the knowledge of medical experts[,]" causation must be established by expert medical testimony. *McNeely*, 108 Ariz. at 455.

**¶7** The claimant presented medical testimony from Dr. Harber, board-certified in pulmonary, internal, and occupational preventative medicine.[2] Dr. Harber works as a professor of Public Health at the University of Arizona and previously was UCLA's Chief of the Division of Occupational and Environmental Medicine. He reviewed the claimant's medical records for treatment he received after his July 26, 2013 industrial injury. The claimant had no symptoms of a preexisting illness. Dr. Harber also received a history of the claimant's work operating earth-moving equipment, beginning in 2007, and his exposure to dust, diesel fumes, and urea in the course of his work. After the industrial injury, diagnostic testing revealed fibrosis and scarring of the claimant's lung tissue.

**¶8** Dr. Harber diagnosed interstitial lung disease. He testified that although the claimant's lung disease may have been developing for years, it became manifest on the date of the industrial injury, when the heat and heavy dust precipitated his symptoms. The doctor stated that the claimant probably has UIP. He testified that repetitive exposure to dust contributed to the severity and progression of the underlying lung disease,

---

[2] Dr. Harber's January 12, 2015 IME report and his forty-two-page curriculum vitae were placed in evidence.

and the repeated exposure to dust also accelerated the progression of the UIP.

**¶9** For the first time on appeal, PDS argues that the ALJ applied an incorrect legal test in her award when she found the claimant's industrial injury contributed to his lung disease. It asserts that if the claimant sustained a lung injury, it was a secondary injury that would only be compensable if it was a "direct and natural result of the primary compensable injury," i.e., heat exhaustion. For that reason, the ALJ should have applied the "compensable consequences" test found in *Lou Grubb Chevrolet v. Indus. Comm'n*, 174 Ariz. 23, 26 (App. 1992).

**¶10** In general, this court will not consider an issue on appeal that was not raised before the ALJ. *See T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 44, ¶ 4 (App. 2000). This rule stems in part from the requirement that a party must develop its factual record before the agency and give the ALJ an opportunity to correct any errors. *See Kessen v. Stewart*, 195 Ariz. 488, 493, ¶ 19 (App. 1999). In the absence of a specific request for review, we limit our appellate review to matters which are extant in the record, such as objections to evidence, and the issue which is fundamental upon review, the sufficiency of the evidence to support the award. *Stephens v. Indus. Comm'n*, 114 Ariz. 92, 94-95 (App. 1977).

**¶11** In the reply brief, PDS asserts that it preserved the issue for appeal because "causation" of the claimant's lung problems was the main issue before the ALJ. While we agree that causation of the claimant's lung problems was at issue, PDS never put the ALJ on notice that it was asserting that the claimant had an elevated burden of proof to establish causation. For that reason, PDS has not preserved this argument for appeal.

**¶12** Under Arizona's workers' compensation law, a compensable claim exists when an industrial injury aggravates a preexisting disease to the point that the worker becomes disabled. *See Tatman v. Provincial Homes*, 94 Ariz. 165, 168-69 (1963) (citation omitted); *Montgomery Ward Co., Inc. v. Indus. Comm'n*, 14 Ariz. App. 21, 22-23 (1971). The industrial injury need not be the sole cause of a disability so long as it contributed to or accelerated the resulting injury. *Romero v. Indus. Comm'n*, 11 Ariz. App. 5, 7 (1969).[3]

---

[3] In the area of workers' compensation, an employer takes an employee as he finds him. *See Div. of Vocational Rehab. v. Indus. Comm'n*, 125 Ariz. 585, 588 (App. 1980).

¶13      The claimant must establish that his "disability was in fact caused, 'triggered' or contributed to by the industrial injury, and was not merely the result of the natural progression of the preexisting disease." *Arellano v. Indus. Comm'n*, 25 Ariz. App. 598, 604 (1976).

> Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by the commission based on any medical testimony . . . will not be disturbed on appeal.

1 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 9.02[5] at 9-21 (2015).

¶14      In this case, Dr. Harber testified that for the sake of ease, he refers to the claimant's lung condition as UIP.  But he acknowledges that by definition, that diagnosis means the cause is unknown, and in this case, there is an external known cause.[4]  He elucidates this in his IME report.

> The main consideration is whether this is truly "idiopathic" (of unknown origin) or whether his occupational exposures contributed.  His age places him at the lower portion of the range for developing the idiopathic form.  The extremely rapid onset of problems and rapid progress in course also is not completely typical for idiopathic UIP.

> There are many factors significantly supporting work contribution. These include: . . . extensive exposure to soil dust[,] . . . urea, diesel exhaust, and other materials.

> It is therefore likely that his dust exposures, particularly during his most recent employment, was a *major contributing* factor to the presentation of his interstitial lung disease.  At the very least, they were *substantially contributing* to its progression and to its precipitation. (emphasis added).

¶15      A medical opinion must be based on findings of medical fact in order to support an award. *Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434 (1973).  These findings can come from the claimant's history, medical records, diagnostic tests, and examinations.  *Id.*  It is ALJ's duty to resolve medical conflicts, and in doing so, she may consider the experience

---

[4]      Dr. Harber referred to the claimant's lung condition as a UIP-like illness.

and qualifications of the experts. *See Tronsen v. Indus. Comm'n*, 18 Ariz. App. 149, 150-51 (1972). In this case, the ALJ adopted the opinion of Dr. Harber over Dr. Schwartzberg and we find no error.

**¶16** The claimant argues that the petitioner's appeal is frivolous, and he should be entitled to receive his attorney fees. Rule 25 of the Arizona Rules of Civil Appellate Procedure allows appellate courts to sanction parties for filing frivolous appeals. An appeal is frivolous when it is "brought for an improper purpose or based on issues which are unsupported by any reasonable legal theory." *Johnson v. Brimlow*, 164 Ariz. 218, 222 (App. 1990) (citing *Ariz. Tax Research Assoc. v. Dep't of Revenue*, 163 Ariz. 255, 258 (1989)). Granting sanctions pursuant to Rule 25 is done with great reservation. *Price v. Price*, 134 Ariz. 112, 114 (App. 1982). Because we conclude that the petitioner's appeal was not brought for an improper purpose, we decline to award attorney fees.

## CONCLUSION

**¶17** For all of the foregoing reasons, we affirm the award.



Ruth A. Willingham · Clerk of the Court
FILED : AA